[Civ. No. 568.    Second Appellate District.—December 21, 1908.]

# SCUDDERS-GALE GROCERY COMPANY, a Corporation, Appellant, v. GREGORY FRUIT COMPANY, a Corporation, Respondent.

CONTRACT—FAILURE OF MINDS TO MEET—PROPOSED PURCHASE OF FRUIT —MODIFICATION—APPROVAL OF SAMPLE AT SHIPMENT.—When proposed terms for the purchase of peaches to be shipped by defendant from San Francisco to plaintiff at St. Louis were accepted subject to approval of sample at time of shipment, and there was no consent of the purchaser to such modification, and no agent of plaintiff was named at San Francisco to approve samples at time of shipment, but plaintiff requested samples to be forwarded to him at St. Louis, to which no reply was made, there was a failure of the minds of the parties to meet upon the terms of contract, 'and no contract was made upon which the defendant can be held liable in damages to the plaintiff for failure to ship the peaches.

ID.—LETTER TO DEFENDANT'S AGENT—RETENTION BY PLAINTIFF AS SALE TICKET—ACCEPTANCE OR ESTOPPEL NOT SHOWN—STATEMENT BY AGENT AS TO NEGOTIATIONS.—The retention by plaintiff, at its request, of a letter written by defendant to its agent expressing acceptance of plaintiff's terms subject to the modification stated, as a sale ticket, does not indicate an acceptance of the modification, nor an estoppel of defendant to deny a contract, when such agent stated at the time that plaintiff must take up further negotiations directly with the defendant.

ID.—HARMLESS EVIDENCE—CUSTOM OF BUYERS.—Evidence as to the custom of buyers to inspect samples at the time of shipment, being in harmony with the plain and unambiguous language of the contract in suit, was without prejudice to the plaintiff.

ID.—EVIDENCE EXPLAINING TERM—"SLIGHTLY PPOCESSED."—Evidence was admissible to explain the meaning of the term "slightly processed," and to show that peaches of that character would tend to dry out and lose weight in transmission.

ID.—EVIDENCE—CUSTOM OF TRADE—DIFFERENT MODES OF SALE—MATE-RIALITY OF MODIFICATION.—Evidence was admissible to show that according to the custom of the trade there were three different modes of sale of fruit: 1. A general sale for a specific price; 2. By sample delivered and approved upon receipt at place of delivery; and 3. Upon examination and approval of sample at time and place of shipment. Such evidence tended to show the materiality of the modification of plaintiff's offer.

ID.—INADMISSIBLE EVIDENCE—REJECTED OFFER.—The court properly refused to admit evidence of an offer made by defendant's agent

which was rejected by the plaintiff, when not shown to have any connection with a subsequent proposition and counter-proposition in writing under which plaintiff claims.

APPEAL from a judgment of the Superior Court of San Bernardino County. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

C. B. Morris, and C. C. Haskell, for Appellant.

Leonard & Surr, F. A. Leonard, and Frank Prescott, for Respondent.

ALLEN, P. J.—Appeal by plaintiff upon a bill of exceptions from a judgment rendered in the superior court of San Bernardino county in favor of defendant.

Plaintiff corporation, doing business at St. Louis, Missouri, claims to have made a contract with defendant corporation, doing business at Colton, California, for the purchase of certain peaches, and that on account of defendant's default in delivery thereof damage resulted, for which it demands judgment. The principal question involved upon this appeal relates to the sufficiency of the evidence to support the finding of the trial court that the defendant did not enter into the agreement as alleged by plaintiff. There is evidence in the record tending to show that one Evans was authorized by defendant to quote prices of peaches to plaintiff, which he did at St. Louis, Missouri, on or about May 18, 1905. These prices quoted were not acceptable to plaintiff, and it submitted to Evans a counter-proposition at a lower figure, which counter-proposition Evans wired to defendant, and was in the words following: "Scudder offers for delivery Sept. 10, f. o. b. common point, 400 50-lb. boxes choice yellow peaches 5¼c.; 400 50-lb. boxes choice peaches, Muirs, slightly processed, 5½c. Brokers here offering same." Defendant upon receipt of such counter-proposition wired Evans as follows: "Regarding your wire 17, confirm, Scudder, subject approval sample time shipment." And on the day following wrote Evans as follows: "Per our wire of the 17th, we have confirmed on following order: Scudder-Gale Grocery Co. 400 50-lb. boxes choice yellow peaches, 50 lb. boxes 5¼c. 400 50-lb. boxes choice Muir peaches, 50-lb. boxes, 5½c. Slightly processed shipment by

Sept. 10th.   Subject approval sample time shipment.   We will get car out as specified upon approval sample.''

This letter Evans showed to plaintiff's president, who requested permission to retain it, saying ''we will keep this as a sale ticket,'' Evans replying that he had no objection to the plaintiff retaining possession of the letter, and further said: ''I would like to have you take the matter up with the Gregory Fruit Company—any further negotiation with regard to this matter—as I myself will not be here.''   Plaintiff did not communicate further with defendant in regard to the transaction until September 13th, when it wrote defendant asking that the samples be sent to St. Louis.   This was followed by other communications in which plaintiff claimed the contract was completed and demanded shipment.   Defendant made no reply to these letters.   On October 7th plaintiff purchased peaches of the kind and character specified in the proposition in the open market and was required to pay therefor an advanced price.

While, aside from the words ''slightly processed,'' there appears to be nothing in the communications uncertain or ambiguous, nevertheless the court permitted evidence tending to show that the words ''subject approval sample time shipment'' meant in the custom of the business that the samples should be examined at the shipping point before shipment was made; that the custom in such sales was for the representative of the buyer to inspect samples before shipment. In view of the fact that the proposition of defendant was that they would get the car out only upon approval of the sample, which sample should be approved at the time of the shipment, it seems to us apparent that the proposition of defendant was that someone representing the plaintiff should approve of a sample of the fruit at the time of the shipment, upon which approval the car would be forwarded.   The evidence admitted, however, only being in line with what seems to us the plain meaning, could not in any wise have prejudiced plaintiff.   Evidence was also offered, under plaintiff's objection, to the effect that where peaches were slightly processed, they would be in a different condition at the time of their arrival from that shown by the sample at time of shipment, the tendency of processed fruit being to dry out and lose weight in transit.   This testimony was admissible as tending to show what was meant by the term ''slightly

processed,'' and what was understood between the parties by its use. Evidence was further introduced by the defendant tending to show that under the custom of the trade goods of this character were sold in three different ways: 1. A general sale for a specified price; 2. By sample delivered and approved upon receipt at place of delivery; and 3. Upon examination and approval of sample by purchaser at time and place of shipment. We think this was admissible as tending to show the materiality of the modification of plaintiff's offer as contained in the letter of May 18th. The offer from Evans was a general purchase of a certain character of fruit at a fixed price without reference to sample. This offer was not accepted by defendant, except as to the price per pound for the specified varieties, as to which it was confirmed; but defendant imposed another condition not incorporated in plaintiff's offer, which was that the goods were to be sold by sample, examined and approved by the purchaser at time and place of shipment. This modified proposition of defendant's was not accepted to defendant's knowledge by plaintiff; nor can plaintiff well say that it was intended by it to be so accepted by reason of its retention of the letter as a sale ticket, for, at the time when plaintiff asked to retain the letter as such ticket, Evans stated to plaintiff that further negotiations must be taken up directly with defendant, which could not have been understood by plaintiff in any way other than as a statement by Evans on behalf of defendant that the negotiations were not ended, but required some affirmative act upon plaintiff's part to conclude the same. We do not see anything in the record from which it can be said that defendant, by any act, is estopped to deny this contract. As we read the record, the great weight of the evidence is to the effect that there was no contract; that the minds of the parties did not meet, and that no definite agreement was ever entered into between them in connection with the sale and purchase of this property, and the finding of the court complained of has ample support in the testimony. This finding being supported, the finding of the court with reference to the relation which Evans bore to defendant is of no consequence.

We perceive no error in rejecting testimony as to the character of the original offer made by Evans to plaintiff, which was rejected. Such offer is not shown to have had any con-

nection with the subsequent proposition and counter-proposition, which were in writing, and under which plaintiff claims.

The finding that there was no contract supports the judgment, which should be affirmed; and it is so ordered.

Shaw, J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1909.